```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                                    :
KIA MOTORS AMERICA, INC.
                                    :
     v.                             :    Civil Action No. DKC 2007-0950
                                    :
CRISWELL KIA, LLC
                                    :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this diversity action[1] is Defendant's Motion to Dismiss or to Compel Arbitration. Defendant contends that this dispute is subject to a "mandatory mediation/arbitration provision" in the parties' Dealer Sales and Service Agreement.  Plaintiff, on the other hand, argues that a later Escrow Agreement supersedes the Dealer Agreement and that the clauses are not, in any event, subject to the Federal Arbitration Act (FAA).  Defendant did not file a reply memorandum.  For the following reasons, the court will stay the case for 90 days and order the parties to participate in mediation and arbitration.

---

[1] Defendant is a limited liability company organized under the laws of the State of Maryland.  Accordingly, its citizenship for diversity purposes is determined by the citizenship of all of its members. *See Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120-21 (4th Cir. 2004).  Those members are not identified in the pleadings.  If any of the members is a citizen of California, then this court will lack subject matter jurisdiction.  Counsel are directed to notify the court immediately if diversity jurisdiction is open to question.

**I. Background**

The following are facts either uncontroverted or viewed in the light most favorable to Plaintiff. Plaintiff is the exclusive distributor in the United States of Kia vehicles, parts and accessories, which it wholesales to authorized Kia dealers. Defendant served as an authorized Kia dealer from approximately May 1999 through February 2006. The relationship between Plaintiff and Defendant was governed by a Dealer Sales and Service Agreement ("Dealer Agreement"). *See* Paper 1, Ex. A. The parties subsequently executed an Escrow Agreement, in February 2006. *See* Paper 1, Ex. C.

On April 12, 2007, Plaintiff filed a complaint alleging that Defendant breached certain duties and obligations and that Defendant has failed to pay certain monies owed to Plaintiff. On May 21, 2007, Defendant filed a motion to dismiss or to compel arbitration on the grounds, *inter alia*, that Plaintiff filed suit in this court without first pursuing mandatory mediation and arbitration, as required under the Dealer Agreement.

**II. Discussion**

   *A. Supersession of Dealer Agreement*

The Dealer Agreement signed by the parties provides, in pertinent part, that its dispute resolution process (DRP) – which consists of non-binding mediation and (if mediation is unsuccessful) non-binding arbitration – "shall be the exclusive

2

mechanism for resolving any dispute, controversy or claim arising out of or relating to this Agreement." Paper 1, Ex. A at Sec. XIII. The parties may seek judicial relief "only after the parties have completed nonbinding mediation and nonbinding arbitration." *Id.* at Sec. XIII.C.

Although it acknowledges the mediation and arbitration provisions, Plaintiff argues that the Escrow Agreement supersedes the DRP provided in the Dealer Agreement. Plaintiff contends that the Escrow Agreement, executed nearly seven years after the Dealer Agreement, "effectively requires [Plaintiff] to resort to court litigation in the event that the parties are unable to agree as to the disposition of the Escrow Funds." Paper 6 at 7 (emphasis in original). As support, Plaintiff points to a provision of the Escrow Agreement, which contemplates a submission by the parties to the Escrow Holder of "a final nonappealable order of a court of competent jurisdiction directing delivery of the Escrow Funds (a 'Court Order')." Paper 1, Ex. C at ¶ 3.(b).

It is well established that there exists "a liberal federal policy favoring arbitration agreements" and, as a result, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

3

Therefore, under these interpretive principles, "[w]hen a party seeking to avoid arbitration contends that the clause providing for arbitration has been superseded by some other agreement, 'the presumptions favoring arbitrability must be negated expressly or by clear implication.'" *Zandford v. Prudential-Bache Securities, Inc.*, 112 F.3d 723, 727 (4th Cir. 1997) (quoting *Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers Union*, 430 U.S. 243, 255 (1977)).

Plaintiff has failed to demonstrate that the Escrow Agreement negates in any way the unambiguously mandatory language of the mediation and arbitration provisions in the Dealer Agreement. Indeed, telling is that Plaintiff couches its argument in qualifying terms – *i.e.*, that the Escrow Agreement "effectively <u>requires</u>"[2] this judicial forum. The Escrow Agreement is simply a mechanism to implement certain provisions of the Dealer Agreement, and the underlying dispute between the parties requires application of the Dealer Agreement. Plaintiff strains to read superseding language into the Escrow Agreement where none exists. Therefore, the mediation and arbitration provisions in the Dealer Agreement govern here. *See Zandford*, 112 F.3d at 728 (finding that settlement agreement at issue "did not purport to 'negate expressly

---

[2] Plaintiff's emphasis of the word "requires" is misplaced, yet it does not obscure the significant preceding adverb "effectively" – which is insufficient to supersede the mandatory DRP provisions in the Dealer Agreement.

4

or by clear implication' the arbitration obligations invoked by the [underlying] form, hence the presumptions favoring arbitration deriving from those provisions").[3]

### B. *Applicability of Federal Arbitration Act*

The FAA does not define "arbitration" and, consequently, "[w]hether an agreement to enter into a non-binding arbitration process is enforceable under the FAA is a matter not well-settled in the federal courts." *United States v. Bankers Ins. Co.*, 245 F.3d 315, 322 (4th Cir. 2001) (noting that Fourth Circuit has "not yet directly addressed the question"). As the Fourth Circuit has explained, however, "[m]andatory arbitration, as a prerequisite to initiation of litigation, and binding arbitration, where the parties must accept an award or decision of the arbitrator, are two different things." *Id.* This distinction is crucial: "Although non-binding arbitration may turn out to be a futile exercise – because [a party] can ultimately reject an arbitrator's decision – this fact does not, as a legal matter, preclude a non-binding arbitration agreement from being enforced." *Id.* The mediation and arbitration procedures in the Dealer Agreement are unquestionably mandatory, and Plaintiff does not contend otherwise.

---

[3] Plaintiff's contention that the Escrow Agreement "was executed in connection with the termination of the Dealer Agreement," Paper 6 at 6, is both unavailing and irrelevant because, upon termination of the Dealer Agreement, the dispute resolution provisions mandating mediation and arbitration are among the "provisions of this Agreement [that] shall remain in full force and effect." Paper 1, Ex. A at Sec. XII.E.5.

5

Plaintiff argues that the FAA does not apply to the mediation and arbitration provisions in the Dealer Agreement because neither procedure constitutes "arbitration" under the FAA. In particular, Plaintiff contends that the DRP cannot settle the dispute because the mediation and arbitration are non-binding procedures. The court disagrees. That the procedures are non-binding is of no moment. Indeed, of greater import is the mandatory nature of the mediation and arbitration procedures in the Dealer Agreement.

Recourse to mediation (and, if mediation is unsuccessful, arbitration) in the first instance is mandatory. The cases cited by Plaintiff do not suggest otherwise. For instance, Plaintiff cites a D.C. Circuit case, in which, according to Plaintiff's parenthetical quotation, "the district court 'held that the contract's dispute resolution procedures were essentially non-binding mediation clauses.'" Paper 6 at 8 (quoting *Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, 333 F.3d 250, 252 (D.C. Cir. 2003)). In fact, Plaintiff omits a critical portion of the complete quotation from the appellate court, which reads in full: "The [district] court held that the contract's dispute resolution procedures were essentially non-binding mediation clauses, ***not a condition precedent to litigation***." *Bombardier Corp.*, 333 F.3d at 252 (emphasis added). By contrast, as the Dealer Agreement makes clear, the mediation and arbitration are conditions precedent to litigation: Judicial relief "shall be resorted to ***only after*** the

6

parties have completed nonbinding mediation and nonbinding arbitration." Paper 1, Ex. A at Sec. XIII.C. (emphasis added).

Plaintiff argues that the DRP would be futile because "[t]he parties are free to ignore the Arbitrator's 'recommended resolution' and return to court." Paper 6 at 8. Yet the parties just as easily may accept the recommendations of the mediation and arbitration – which, of course, would resolve the dispute. Where mediation and arbitration procedures are mandatory but non-binding, as here, it does not necessarily follow that the procedures would be futile because the court properly may expect that the parties "would presumably act reasonably and rationally, and would approve an arbitration award or decision that [they] found favorable." *Bankers Ins. Co.*, 245 F.3d at 323.[4] *See also Russell County Sch. Bd. v. Conseco Life Ins. Co.*, 2001 WL 1593233 at *3 (W.D.Va. 2001) (mandatory non-binding arbitration provision was enforceable where "parties must submit disputes to arbitrators. . . and nothing in the provision allows the parties to go outside the arbitration process for recourse from the courts") (citing *Bankers Ins. Co.*, 245 F.3d at 322-23)).

The FAA provides, in pertinent part, that "[a] written provision in. . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising

---

[4] In *Bankers Ins. Co.*, the arbitration decision or award was binding on only one party but not the other (the United States). However, this distinction does not affect the instant analysis.

out of such contract. . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2; *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("FAA broadly provides" for presumption of validity of arbitration under 9 U.S.C. § 2). In this case, the clear and unambiguous language of the mediation and arbitration provisions in the Dealer Agreement fits within the definition of "arbitration" under the FAA because the provisions signal "the parties' intent to provide an alternative method to 'settle' controversies arising under the parties' agreement." *Mortimer v. First Mount Vernon Indus. Loan Ass'n*, 2003 WL 23305155 at *2, n.5 (D.Md. 2003) (internal quotation omitted).

### *C. Procedural Disposition of Action*

The FAA requires a court to stay "any suit or proceeding," upon application of a party, pending the arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. Defendant has moved to stay this proceeding until completion of mediation and arbitration. Under the Dealer Agreement, however, a covered dispute "must first be submitted to nonbinding mediation," Paper 1, Ex. A at Sec. XIII.A., and is then submitted to non-binding arbitration if the dispute "is not resolved. . . through mediation." *Id.* at Sec. XIII.B. That is, mediation is a condition precedent to arbitration. Nevertheless, because this mandatory mediation procedure constitutes "arbitration," the FAA applies in this dispute. *See*

*Am. Tech. Servs. v. Universal Travel Plan, Inc.*, 2005 WL 2218437 at **2-3 (E.D.Va. 2005) (staying case and ordering parties to comply with mandatory mediation provision where case was "still in the very early stages of litigation" and thus "little prejudice" would inure to parties).

### III. Conclusion

For the foregoing reasons, the court will stay this case for 90 days and order that the parties participate in good faith in the mediation and arbitration proceedings in the interim, as prescribed under the Dealer Agreement. The parties shall file a report with the court at the completion of the 90-day period with the results of the mediation and arbitration. A separate Order will follow.

                                  /s/
                              DEBORAH K. CHASANOW
                              United States District Judge